**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ELIZABETH L. MCNULTY SHANK, *Plaintiff*, | : | |
| v. | : | CIVIL ACTION NO. 26-CV-5234 |
| JUSHI HOLDINGS INC, *et al.*, *Defendants*. | : | |

## MEMORANDUM

**Pappert, J.** **October 15, 2026**

Elizabeth L. McNulty Shank filed this *pro se* civil action alleging claims of employment discrimination and retaliation against Jushi Holdings Inc., doing business as Beyond Hello; JMGT LLC; Pennsylvania Medical Solutions, LLC (PAMS); and Franklin Bioscience – Penn LLC (hereinafter collectively referred to as "Beyond Hello").[1] (Dkt. No. 2.) Shank also filed a Motion to Proceed *In Forma Pauperis* (Dkt. No. 1) and a Motion to Appoint Counsel (Dkt. No. 4). For the following reasons, the Court will grant Shank leave to proceed *in forma pauperis*, dismiss the Complaint without prejudice to Shank filing an amended complaint, and deny her Motion to Appoint Counsel without prejudice.

---

[1] The Complaint does not specifically identify which of these four defendants is Shank's employer, and Shank does not differentiate between the corporate entities in the Complaint, instead referring to them collectively as "Defendant" or "Defendants."

I[2]

Shank claims she began her employment "with Defendant" as a patient consultant in October 2022. (*Id.* ¶ 12.) When she returned to work "following medical leave,"[3] Shank allegedly "faced hurdles regarding her disability," and was forced to "seek formal corporate permission" to use her "medically necessary walker on the sales floor." (*Id.* ¶14.)

In September 2024, security guard Chris Shane told Shank that "her disabilities were 'unfair' and a 'burden' to her coworkers, and that she "'leaned' on her disabilities to make things easier." (*Id.* ¶ 15.) Shank objected and immediately reported this "harassment to the General Manager" and requested to go home early "to prevent a medical panic attack induced by the hostile environment." (*Id.* ¶ 16.) Shortly thereafter, Shank was called into a disciplinary meeting with the assistant general manager, Chris Ruth, who issued a formal write-up against her, "penalizing [Shank] for her defensive reaction to the security guard's severe harassment." (*Id.* at 17.) This was Shank's first formal disciplinary infraction. (*Id.*) During the meeting, Ruth allegedly admitted that Shane's comments were inappropriate, stating that "Nobody should talk to anyone that way, except Mary. [Mary Garafalo] has a pass because she was shot in the head and I can't imagine what that was like." (*Id.* ¶ 18.) Shank claims that by making this statement, Ruth "established that specific individuals could be immune from corporate anti-harassment policies." (*Id.* ¶ 19.)

---

[2] The factual allegations are taken from the Complaint ("Compl." (Dkt. No. 2).) The Court adopts the sequential pagination supplied by the CM/ECF docketing system.

[3] Shank alleges no facts regarding the date or length of medical leave, nor does she provide any information as to why the medical leave was taken or whether it was related to a known disability.

In October 2024, Garafalo allegedly began a "targeted campaign of harassment" against Shank by "attacking [Shank's] disability, age, and temporary unhoused status." (*Id.* ¶ 20.) Garafalo allegedly called Shank a "socialist," and told her to "leave the country." (*Id.* ¶ 21.) Garafalo also told Shank that her "adult children should be 'taking care of' her" while she awaited a decision from the Social Security Administration. (*Id.*) Shank requested that Garafalo refrain from speaking to her unless the communication was work-related, but Garafalo continued to target her "with taunting, sarcastic greetings and farewells accompanied by a visible smirk." (*Id.* ¶¶ 22-23.) Shank claims that when she sought to enforce a workplace boundary, human resources initially told her that "setting personal boundaries with a coworker went against the company's 'happy workplace policy.'" (*Id.* ¶ 24.) Shank then spoke to general manager Eric Rodrigo, who counseled Garafalo and altered shifts to temporarily separate Garafalo and Shank. (*Id.* ¶ 26.) Garafalo ceased making "explicit offensive comments" for approximately six weeks. (*Id.* ¶ 33.) At some point, however, Garafalo "resumed her passive-aggressive harassment by greeting [Shank] with annoyed facial expressions and an exaggerated, disingenuous, 'sing-songy' tone." (*Id.* ¶ 34.) Shank reported this behavior to a manager who then "counseled Garafalo that she was not required to greet [Shank]." (*Id.* ¶ 35.)

In October 2024, an unidentified coworker approached Shank and told her that "Garafalo was actively soliciting other employees to submit false or exaggerated complaints" about Shank. (*Id.* ¶ 27.) Shank avers that Garafalo was attempting "to orchestrate a third disciplinary write-up against [her]" because under corporate policy, "a third infraction would trigger automatic termination." (*Id.* ¶ 28.) Shank claims that

Garafalo fabricated a complaint to human resources regarding a conversation they shared, falsely claiming that the interaction took place on the medical dispensary floor in front of patients when it occurred in a private room. (*Id.* ¶¶ 29-30.) Without conducting its own investigation, Shank avers that "Defendant" relied on Garafalo's "fabricated narrative" and issued a formal disciplinary write-up against her in October 2024. (*Id.* ¶¶ 31.) This was Shank's second disciplinary infraction. (*Id.*) Shank contends that the decision to penalize her based on an unverified accusation constituted retaliation. (*Id.* ¶ 32.)

Shank alleges that Garafalo disregarded prior "counseling directives" on August 9, 2025, when Garafalo greeted her "in a passive-aggressive, sing-songy manner." (*Id.* ¶ 37.) When Shank told Garafalo that "such contact was 'not necessary,'" Garafalo yelled, slammed objects, and aggressively told Shank to "go get help" when Shank called for a manager. (*Id.* ¶ 38.) Shank claims that management refused to review security footage, and instead, issued another disciplinary write-up against her, citing a violation of the corporate "happy workplace" policy. (*Id.* ¶ 40.)

Shank says she was targeted by Garafalo on December 6, 2025, when Garafalo sarcastically greeted her and then stomped away. (*Id.* ¶ 41.) That same day, Shank filed "a formal harassment report via Defendant's anonymous employee portal, 'Speakfully,'" to report "ongoing disability-based harassment, a hostile work environment, and unlawful retaliation for her prior complaints." (*Id.* ¶ 42.) Shank claims that "[i]n direct retaliation for utilizing the 'Speakfully' portal, Defendant issued [her] another write-up, refused to provide specific grounds for the discipline, and failed to offer a signature line." (*Id.* ¶ 43.) She alleges that she was also "permanently

demoted . . . to the Check-In zone," removed from "Register shifts," and her Saturday shifts were overlapped with "Garafalo . . . to maximize the hostile work environment." (*Id.* ¶ 44.)

On December 20, 2025, Shank identified a water leak originating from the facility's lobby ceiling, that she claims went unaddressed "since mid-November and caused a severe buildup of toxic mold." (*Id.* ¶ 45.) The next day, "Defendant placed a tarp and bucket on the floor," instead of "remediating the hazardous conditions." (*Id.* ¶ 46.) On December 26, 2025, Shank "formally reported that exposure to the ceiling leak and corresponding mold buildup had induced severe medical symptoms directly aggravating her reported disability." (*Id.* ¶ 47.) She claims that "Defendant filed a workers' compensation claim regarding [her] mold-induced illness under the employer name JMGT, LLC, and directed her to seek evaluation at an urgent care facility." (*Id.* ¶ 48.) She alleges that she "required four (4) non-consecutive days of medical absence" because of symptoms associated with her "reported disability and toxic workplace exposure." (*Id.* ¶ 49.) She also claims that "Defendant" failed to accommodate her and "assign[ed] her to work shifts directly adjacent to the water leak and ineffective water remediation system." (*Id.* ¶ 50.) Shank was terminated on January 15, 2026, because of "unprofessional conduct and other things that have come to light." (*Id.* ¶ 51.) She claims the reasoning given "was a transparent pretext used by Defendant to mask its true retaliatory motives," including her workers' compensation claim, mold exposure reports, and internal complaints regarding disability discrimination. (*Id.* ¶ 52.)

Shank raises claims under the Americans with Disabilities Act and Age Discrimination in Employment Act of 1967 based on disability- and age-based

discrimination, and alleges that Defendants failed to accommodate her disability, subjected her to a hostile work environment, and retaliated against her. (Compl. at 5-7.) She avers that she "is an individual with a disability within the meaning" of the ADA and "over forty (40) years of age," which is "within the protected age category" under the ADEA. (Compl. at ¶¶ 13, 54, 64.) Shank alleges she filed a charge of discrimination based on disability, age, and retaliation with the Equal Employment Opportunity Commission ("EEOC") and received a Notice of Right to Sue Letter on April 30, 2026.[4] (*Id.* ¶¶ 9-10; *see also* Dkt. No. 5.) She seeks monetary damages. (*Id.* at 8.)

II

Because Shank appears to be unable to pay the fees to commence this civil action, the Court will grant her leave to proceed *in forma pauperis*. Accordingly, the Complaint is subject to screening pursuant to 28 U.S.C. § 1915(e)(2)(B), which requires the Court to dismiss the Complaint if, among other things, it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021). At the screening stage,

[4] The Charge of Discrimination lists "Beyond Hello/Franklin Bioscience" as the employer. (Dkt. No. 5 at 6.)

the Court will accept the facts alleged in a *pro se* complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether that complaint contains facts sufficient to state a plausible claim. *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "Although the plausibility standard does not impose a probability requirement, *Twombly*, 550 U.S. 556, it does require a pleading to show "more than a sheer possibility that a defendant has acted unlawfully," *Iqbal,* 556 U.S. at 678. "[T]he plausibility paradigm . . . applies with equal force to analyzing the adequacy of claims of employment discrimination." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) (quotations omitted). To state an employment discrimination claim, as with any other claim, a plaintiff must "put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Id.* at 213 (quotations omitted).

The Court construes the allegations of a *pro se* litigant liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "[P]ro se litigants still must allege sufficient facts in their complaints to support a claim." *Vogt*, 8 F.4th at 185 (quoting *Mala*, 704 F.3d at 245). An unrepresented litigant

also "cannot flout procedural rules - they must abide by the same rules that apply to all other litigants." *Id.* (quoting *Mala*, 704 F.3d at 245). In that regard, a complaint may be dismissed for failing to comply with Federal Rule of Civil Procedure 8. *Garrett v. Wexford Health*, 938 F.3d 69, 91 (3d Cir. 2019). Rule 8 requires a pleading to include a "short and plain statement showing that the pleader is entitled to relief," as well as a statement of the court's jurisdiction and a demand for the relief sought. Fed. R. Civ. P. 8(a).

III

Federal Rule of Civil Procedure 8 requires a complaint to describe actions taken by a defendant in relation to the plaintiff's claims in a manner that is not ambiguous or confusing. *Garrett*, 938 F.3d at 93. In determining whether a pleading meets Rule 8's "plain" statement requirement, a court must "ask whether, liberally construed, a pleading 'identifies discrete defendants and the actions taken by these defendants' in regard to the plaintiff's claims." *Id.* (citation omitted). "[A] pleading that is so 'vague or ambiguous' that a defendant cannot reasonably be expected to respond to it will not satisfy Rule 8." *Id.* The important consideration for the court is whether "a pro se complaint's language . . . presents cognizable legal claims to which a defendant can respond on the merits." *Id.* at 94. In other words, a complaint must provide factual details about what each defendant did, including sufficient information about when, where, and under what circumstances the relevant events took place, to both put the defendants on notice of what they are accused of doing and to support the necessary elements of a claim.

Shank's Complaint has many defects rendering her claims not plausible. Fundamentally, to proceed with an ADA or an ADEA claim, a plaintiff must allege an employment relationship with the defendant. *Clackamas Gastroenterology Assocs., P.C. v. Wells*, 538 U.S. 440, 448-450 (2003) (determining that an employer, for the purposes of the ADA and other antidiscrimination laws, is an entity that "[c]an hire and fire employees, can assign tasks to employees and supervise their performance . . .."); *Edwards v. Borough of Dickson City*, 994 F. Supp. 2d 616, 622 (M.D. Pa. 2014) ("Under the ADEA, a plaintiff can only sue his employer, an employment agency, or a labor organization." (citing 29 U.S.C. § 623)); *see also Stinnett v. Delta Air Lines, Inc.*, 278 F. Supp. 3d 599, 613 (E.D.N.Y. 2017) ("An individual may not bring an ADA suit against a non-employer." (citing *Clackamas Gastroenterology Assocs., P. C. v. Wells*, 538 U.S. 440, 450 (2003)). This includes the ADA's anti-retaliation remedy, 42 U.S.C. § 12203(a), which is unavailable in employment-related disputes against non-employer defendants, *see D'Angelo v. Sch. Dist. of Phila.*, No. 25-5330, 2025 WL 3254821, at *6 (E.D. Pa. Nov. 21, 2025) (citing *Hiler v. Brown*, 177 F.3d 542, 546 (6th Cir. 1999)).

Shank names as defendants four corporate entities, but does not explicitly identify which, if any, of these entities was her employer. She also does not differentiate between these entities in making her allegations, instead referring to them collectively throughout the Complaint as "Defendant" or "Defendants." This is not a proper manner of pleading the involvement of any defendant. A plaintiff generally cannot state a claim by repeatedly and collectively referring to the "defendants" as a group without clarifying the specific basis for each defendant's liability. *See Lawal v. McDonald*, 546 F. App'x 107, 113 (3d Cir. 2014) (agreeing with

the district court that the repeated and collective use of the word "Defendants" "fail[ed] to name which specific Defendant engaged in the specific conduct alleged'"); *see also Hudson v. McKeesport Police Chief*, 244 F. App'x 519, 522 (3d Cir. 2007) (*per curiam*) (affirming dismissal of defendant who was only named in caption of case).

The circumstances of Shank's alleged claims, and how they relate to each of the named defendants, are also unclear. Having reviewed Shank's submission in its entirety and construing her allegations liberally, they do not meet Rule 8's "plain" statement requirement. Shank's Complaint fails to state a claim against any of the defendants, because it either fails to allege their personal involvement or fails to present claims that discrete defendants could identify and respond to on the merits in compliance with Federal Rule of Civil Procedure 8. *See Garrett*, 938 F.3d at 94. Accordingly, Shank's Complaint will be dismissed on this basis. *See Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) (explaining that Rule 8 permits dismissal where the complaint "is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised"); *Afzal v. N.J. Bd. of Med. Examiners*, No. 22-1609, 2022 WL 4533826, at *3 (3d Cir. Sept. 28, 2022) (*per curiam*) (affirming dismissal of complaint pursuant to Rule 8 because plaintiff failed to plead adequate factual content to support a reasonable inference that defendants were liable and failed to present cognizable legal claims to which defendants could respond on the merits).

The Court will permit Shank to file an amended complaint. Any amended complaint must clearly describe the factual basis for Shank's claims and how the claims relate to the named defendants. "[A]lthough the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer

possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). "A complaint that pleads facts merely consistent with a defendant's liability stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (citation modified); *see also Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997) (the Court is not required "to accept as true unsupported conclusions and unwarranted inferences.").

As noted, Shank's claims are also fatally flawed in other respects. To state a claim for employment discrimination under the ADA, a plaintiff must allege that she has a disability within the meaning of the ADA, she was "otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and she suffered an otherwise adverse employment decision as a result of discrimination." *Morgan v. Allison Crane & Rigging LLC*, 114 F. 4th 214, 220-21 (3d Cir. 2024) (quoting *Eshleman v. Patrick Indus., Inc.*, 961 F.3d 242, 245 (3d Cir. 2020) (citation modified)). The discrimination element encompasses claims that an employer failed to make reasonable accommodations for the plaintiff's disabilities. *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999). To state a claim for a failure to accommodate under the ADA, a plaintiff must allege sufficient facts to support a reasonable inference that: "(1) [s]he was disabled and [her] employer knew it; (2) [s]he requested an accommodation or assistance; (3) [her] employer did not make a good faith effort to assist; and (4) [s]he could have been reasonably accommodated." *Capps v. Mondelez Global, LLC*, 847 F.3d 144, 157 (3d Cir. 2017) (quoting *Armstrong v. Burdette Tomlin Mem'l Hosp.*, 438 F.3d 240, 246 (3d Cir. 2006)); *see also Marquis v. Phila. Gas*

*Works*, No. 25-7005, 2026 WL 66890, at *2 (E.D. Pa. Jan. 8, 2026). To state a claim for a hostile work environment in the context of the ADA, a plaintiff must allege that (1) she is a qualified individual with a disability under the ADA; (2) she was subject to unwelcome harassment; (3) her employer harassed her because of her disability or because of a request for an accommodation; (4) the harassment was sufficiently severe or pervasive to alter the conditions of plaintiff's employment and to cause an abusive working environment; and (5) the defendant employer knew or should have known of the harassment and failed to take prompt effective remedial action. *See Walton v. Mental Health Ass'n of Se. Pa.*, 168 F.3d 661, 667 (3d Cir. 1999).

Individuals are disabled within the meaning of the ADA if they: (1) have "'a physical or mental impairment that substantially limits one or more' of their 'major life activities'; (2) have 'a record of such an impairment'; or (3) are 'regarded as having such an impairment.'" *Id.* (quoting 42 U.S.C. § 12102(1)). Major life activities include, *inter alia*, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working, and impairment of the operation of a major bodily function. § 12102(2)(A), (B).

Shank merely states in conclusory terms that she is disabled and is subjected to ongoing disability-based discrimination, including a hostile work environment and the denial of reasonable accommodations.[5] (Compl. at 5-6.) This is insufficient to allege

[5] Shank also alleges retaliation. The ADA's anti-retaliation provision states in relevant part that "no person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by [the ADA]" and that it is unlawful to "coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any

the elements of an ADA claim. A complaint must allege enough facts to "raise a right to relief above the speculative level." *See Twombly*, 550 U.S. at 555 (explaining that "a plaintiff's obligation to provide the grounds of [her] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," because "courts are not bound to accept as true a legal conclusion couched as a factual allegation" (cleaned up and citation omitted)). "A plaintiff cannot survive dismissal just by alleging the conclusion to an ultimate legal issue." *Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021).

Other than her conclusory statement that she "is an individual with a disability within the meaning" of the ADA and utilized a walker upon her return from an unexplained medical leave (*see* Compl. ¶¶ 13-14, 54), Shank alleges no facts to suggest she suffered from a disability or was regarded as having a disability within the meaning of the ADA. She fails to allege any facts about how or why she is disabled or how that disability limits a major life activity, rendering her ADA claims implausible. *Accord*, *Atamian v. Burns*, 236 F. App'x 753, 755 (3d Cir. 2007) (*per curiam*) (affirming district court's dismissal of ADA claim where the plaintiff "failed to allege that he is a

---

right granted or protected by [the ADA]." 42 U.S.C. § 12203(a) and (b). This provision is similar to Title VII of the Civil Rights Act of 1964's prohibition of retaliation. *See* 42 U.S.C. § 2000e–3(a). Accordingly, courts analyze ADA retaliation claims under the same framework employed for retaliation claims arising under Title VII. *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997) (citing cases). A plaintiff states a plausible retaliation claim based on employment discrimination if she "pleads sufficient factual allegations to raise a reasonable expectation that discovery will reveal evidence of the following elements: (1) she engaged in conduct protected by Title VII [or here the ADA]; (2) the employer took adverse action against her; and (3) a causal link exists between her protected conduct and the employer's adverse action." *Connelly*, 809 F.3d at 789; *Carvalho-Grevious v. Delaware State Univ.*, 851 F.3d 249, 257 (3d Cir. 2017). A general complaint about unfair treatment does not constitute protected activity; a plaintiff must show that she complained specifically about unlawful discrimination. *See Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 702 (3d Cir. 1995).

disabled person within the meaning of the ADA"); *see also Van Der Poel v. Mannheim Auto Auction*, No. 08-5607, 2009 WL 1754598, at *1 (E.D. Pa. June 18, 2009) ("Even accepting, as the Court must, all the allegations in the Complaint as true, Plaintiff's claim under the ADA fail [sic] because Plaintiff has failed to allege that he is a disabled person within the meaning of the ADA."); *Marquis v. Piedmont Airlines*, No. 26-3972, 2026 WL 2018438, at *2 (E.D. Pa. Jul. 10, 2026) (holding that conclusory allegation of disability made discrimination claim implausible; disability-based hostile work environment also required allegation that Marquis was a qualified individual with a disability; and retaliation claim required she allege that she engaged in conduct protected by the ADA).

Also, to establish a *prima facie* case of age discrimination under the ADEA, a plaintiff must allege facts to support that "(1) [she] is at least forty years old; (2) [she] suffered an adverse employment decision; (3) [she] was qualified for the position in question; and (4) [she] was ultimately replaced by another employee who was sufficiently younger so as to support an inference of a discriminatory motive."[6] *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 644 (3d Cir. 2015) (citing *Burton v. Teleflex Inc.*, 707 F.3d 417, 426 (3d Cir. 2013)).

Shank avers that she is "over forty (40) years of age . . . within the protected age category" under the ADEA. (Compl. ¶ 64.) She does not identify her date of birth or even the year in which she was born. Putting that issue aside, the only fact Shank alleges with respect to her claim of age discrimination is that Garafalo made a "hostile

---

[6] "Where the plaintiff is not directly replaced, the fourth element is satisfied if the plaintiff can provide facts which 'if otherwise unexplained, are more likely than not based on the consideration of impermissible factors.'" *Willis*, 808 F.3d at 644 (quoting *Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 352 (3d Cir. 1999)).

remark[] stating that [Shank's] adult children should be 'taking care' of [Shank]." (*Id.* ¶¶ 21, 66.) She also alleges in conclusory fashion only that "Defendants" terminated her and "treated her less favorably than substantially younger employees." (*Id.* ¶ 68.) Shank fails to plausibly assert an age discrimination claim because she does not sufficiently connect her age to her termination, and she does not provide any facts explaining how or when she was treated less favorably than other employees. *See Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 799 (3d Cir. 2003) (explaining that, for statutory screening, a plaintiff must allege "some causal nexus between [her] membership in a protected class" and the adverse employment action). Shank merely asserts that actions taken against her were discriminatory, but that is insufficient. *See Twombly*, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"); *see also Martinez*, 986 F.3d at 266 ("In an age-discrimination suit, the legal conclusion that the plaintiff needs to win is that the employer took the adverse action because of the plaintiff's age.").

IV

For the foregoing reasons, the Court will grant Shank leave to proceed *in forma pauperis* and dismiss her Complaint without prejudice for failure to comply with Rule 8 of the Federal Rules of Civil Procedure and for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Shank will be permitted to file an amended complaint if she can allege facts to cure the deficiencies noted by the Court. Her request for appointment of counsel will be denied as premature. *Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993) (holding that, in determining whether to appoint *pro bono* counsel, the Court must first consider, as a threshold matter, whether the plaintiff's claim has

"some merit in fact and law"). An order containing additional information on amendment will be entered separately.

**BY THE COURT:**

***/s/ Gerald J. Pappert***
**Gerald J. Pappert, J.**